IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:14-CT-3271-FL

| | | |
|---|---|---|
| JOHN L. WOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| KEVIN WADE and STEPHEN BATTEN, | ) | |
| | ) | |
| Defendants.[1] | ) | |

This matter is before the court on plaintiff's motion for summary judgment (DE 120), and defendant Stephen Batten's ("Batten") motion for summary judgment (DE 134). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court denies both motions.

**STATEMENT OF THE CASE**

Plaintiff commenced this action pro se on October 27, 2014, under 42 U.S.C. § 1983, asserting that he was subjected to excessive force while imprisoned at Maury Correctional Institution ("Maury") on January 2, 2014, in violation of the Eighth Amendment to the United States Constitution. Originally, plaintiff named as defendants only defendant Kevin Wade ("Wade"), former defendant Priscilla Sutton ("Sutton"), and three "John Does," all correctional officers at Maury. On March 25, 2016, after a period of discovery, plaintiff filed an amended complaint to add

---

[1] This court constructively has amended the caption of this order to reflect prior court dismissal of formerly-named defendants.

claims against defendant Batten, as well as former defendants Sidney Smith ("Smith"), Jerry Fitzgerald ("Fitzgerald"), and Melvin Adams ("Adams"), additional correctional officers at Maury.

On May 6, 2016, the court directed North Carolina Prisoner Legal Services (NCPLS) to conduct an investigation of plaintiff's claims in the action, and to indicate whether it will represent plaintiff during any stage of the litigation. NCPLS entered a notice of appearance, for purposes of the mediation and summary judgment stages of the litigation. An additional period of discovery followed.

Plaintiff filed the instant motion for summary judgment as to claims against defendant Batten and defendant Wade on February 15, 2017. In support of the motion, plaintiff filed a memorandum of law, statement of material facts, and appendix of exhibits comprising the following: 1) plaintiff's declaration; 2) plaintiff's medical records; 3) internal investigation statement by defendant Batten; 4) four sealed North Carolina State Bureau of Investigation ("SBI") reports containing accounts of statements made by defendant Wade, former defendant Smith, and non-parties John Herring and Joshua Barnes, all administrative or correctional officers at Maury. Defendant Batten responded in opposition, on March 30, 2017, including statement of material facts and appendix of exhibits comprising the following: affidavits of defendant Batten and former defendants Smith, Fitzgerald, and Sutton. Defendant Wade filed a response in opposition and statement of facts.

In the meantime, defendant Batten filed the instant cross-motion for summary judgment on February 20, 2017, including memorandum of law, statement of material facts, and an appendix, including 1) reference to surveillance video previously filed by North Carolina Department of Public Safety, 2) affidavit and expert report of Dr. Moira Artigues, 3) affidavit of defendant Batten, 4) photographs, 5) inmate background information on plaintiff, and 6) plaintiff's medical records.

2

Plaintiff responded in opposition, including a statement in opposition to defendant Batten's statement of facts.

Former defendants Sutton, Smith, Adams, and Fitzgerald also filed a motion for summary judgment, on February 16, 2017, accompanied by appendix including surveillance video, photos, discovery responses, and affidavits of former defendants Sutton, Smith, and Fitzgerald. Upon plaintiff's motion, however, the court granted voluntary dismissal of former defendants Sutton, Smith, Adams, and Fitzgerald, on April 11, 2017.

## STATEMENT OF THE FACTS

The undisputed facts may be summarized as follows. On January 2, 2014, plaintiff was an inmate housed at Maury. Around 11:00 a.m. that day, plaintiff assaulted former defendant Fitzgerald in an inmate day area located on the second floor of the facility, with a shank made from a toothbrush and a razor. Plaintiff came up behind Fitzgerald while walking through the day area and slashed Fitzgerald in the neck causing serious injuries to him. Former defendant Wade heard the altercation and ran to assist Fitzgerald, and the two officers struggled with plaintiff and ultimately took plaintiff to the ground and handcuffed him.

Other officers, including defendant Batten and former defendant Sutton, arrived at the scene as plaintiff was being brought to the ground, and assisted in securing plaintiff. Additional officers escorted Fitzgerald away to the main medical area. Then defendants Batten and Wade, accompanied by several more correctional officers, walked plaintiff away from the day area, with plaintiff positioned to walk backwards in order to maintain control over plaintiff, who was resisting restraint.

Defendants Batten and Wade brought plaintiff down a stairwell to the main hallway of the facility. Defendants Batten and Wade, assisted by several additional officers, took plaintiff to

3

another hallway area and added leg restraints and a waist chain to plaintiff's handcuffs. Then, defendants Batten and Wade, accompanied by multiple additional correctional officers, brought plaintiff to an area known as the Receiving Area of the facility, towards a holding cell. At that time, defendants Batten and Wade were at plaintiff's sides and brought him into the holding cell, where they pushed plaintiff onto the floor of the holding cell. While plaintiff was on the floor of the holding cell in full restraints, in handcuffs, shackles, and a waist chain, defendant Wade kicked plaintiff in the head and defendant Batten kicked plaintiff in the lower back or buttocks area.

Upon seeing actions by defendants Wade and Batten, two administrative officers present at the holding cell doorway, Herring and former defendant Smith, ordered defendants Wade and Batten to stop. Herring pulled Wade and Batten from the holding cell and directed them to leave the area, and they walked past a group of correctional officers and staff gathered around the doorway of the holding cell. Former defendant Sutton briefly stopped Batten and told him to "get himself together," and defendants Wade and Batten left the holding cell area.

Plaintiff suffered physical injury, including bruises and cuts, as a result of his contact with correctional officers on that date. Additional facts and inferences drawn from the evidence of record, viewed in the light most favorable to the non-moving party, will be discussed in the analysis below.

## DISCUSSION

A.   Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district

4

court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation omitted). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based

on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.  Analysis

A claim of excessive force by a correctional officer against an inmate is evaluated as a possible violation of the Eighth Amendment's prohibition against "cruel and unusual punishments." U.S. Const. amend. VIII; see Whitley v. Albers, 475 U.S. 312, 319 (1986); Hudson v. McMillian, 503 U.S. 1, 5-7 (1992). A correctional officer violates the Eighth Amendment when he applies "unnecessary and wanton infliction of pain." Hudson, 503 U.S. at 5. When determining whether the force applied by prison officials was excessive, the court must determine if the "force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Id. at 6-7 (citation omitted).

In making this determination, courts look at factors including: (i) "the need for the application of force," (ii) "the relationship between the need and the amount of force that was used," (iii) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them," and (iv) "any efforts made to temper the severity of a forceful response." Whitley, 475 U.S. at 320 (the "Whitley factors"). In demonstrating that a correctional officer acted "maliciously and sadistically," an inmate raising an excessive force claim must show that the officer used a "nontrivial" amount of force. Wilkins v. Gaddy, 559 U.S. 34, 39 (2010).

6

While an inmate must show nontrivial force, an Eighth Amendment violation need not cause a serious injury. Id. at 38. "This is not to say that the 'absence of serious injury' is irrelevant to the Eighth Amendment inquiry." Id. at 37. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." Id. (quoting Whitley, 475 U.S. at 321). "The extent of injury may also provide some indication of the amount of force applied." Id. On the one hand, "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." Id. at 38. On the other hand, "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Id.

1. Defendant Batten's Motion for Summary Judgment

Turning first to defendant Batten's motion, the court holds that plaintiff has demonstrated a genuine issue of material fact as to whether defendant Batten committed an Eighth Amendment violation, when viewing the facts in the light most favorable to plaintiff.

With respect to the first Whitley factor, the need for force, plaintiff has brought forth evidence that there was no need for force at the time defendant Batten kicked plaintiff in the holding cell. It is undisputed that plaintiff was on the floor of the holding cell in full restraints, in handcuffs, shackles, and a waist chain, when defendants Wade and Batten kicked plaintiff. (See, e.g., Batten Aff. (DE 149-2) ¶ 9). Further, viewing the facts in the light most favorable to plaintiff, defendants Wade and Batten had pushed plaintiff onto the floor of the holding cell, and plaintiff landed and curled up in a fetal position, when defendants Wade and Batten kicked him. (Pl's Statement of Facts (DE 122) ¶¶ 8-9). Prior to being placed into the holding cell, in the receiving area, defendants

Wade and Batten were at plaintiff's sides, they had control over plaintiff, and plaintiff was not resisting or talking. (Pl's Decl. (DE 123-1) ¶ 10). Administrative officers Herring and Smith were very close behind, and multiple additional correctional officers were standing at the doorway of the holding cell. (See Sutton Aff. (DE 149-1) ¶¶ 23, 28, 44; Smith Aff. (DE 149-1) ¶ 20; surveillance video (DE 131-4) Camera 78).[2] In sum, viewing the facts in the light most favorable to plaintiff, there was no need for use of force against plaintiff in the holding cell.

Regarding the second Whitley factor, plaintiff has brought forth evidence that defendant Batten applied a nontrivial amount of force. Viewed in the light most favorable to plaintiff, defendants Batten and Wade kicked plaintiff "several times in the head and body" or "about the head and torso." (Pl's Decl. ¶ 12). Plaintiff suffered "bruises and cuts on [his] head and pain throughout [his] body." (Id. ¶ 14). Plaintiff's medical records show "[b]ruising and hematoma to L eyebrow ridge and under L eye," and "[l]inear bruising to R mid back," permitting an inference that these injuries were caused by kicks applied by defendants Batten and Wade. (DE 123-2). Accordingly, the amount of force actually applied exceeded the need for force.

With respect to the third Whitley factor, the threat reasonably perceived by prison officials, plaintiff has brought forth evidence that, when viewed in the light most favorable to plaintiff, permits an inference that prison officials, including defendant Batten, did not reasonably perceive a threat from plaintiff at the time defendants Batten and Wade kicked plaintiff. Although plaintiff presented a significant threat to officers and other inmates prior to being placed in the holding cell, viewing the facts in the light most favorable to plaintiff, plaintiff did not present a threat after being

---

[2] The surveillance video showing the holding cell area at the time of the kicking by defendants Batten and Wade was filed manually by former defendants Adams, Fitzgerald, Smith, and Sutton, in conjunction with filing of their appendix to statement of material facts. (See DE 131-4). The surveillance video shows only the hallway area outside of the holding cell and the doorway area of the holding cell.

8

placed in the holding cell. As noted previously, defendants Wade and Batten had pushed plaintiff onto the floor of the holding cell, and plaintiff landed and curled up in a fetal position, fully restrained, when defendants Wade and Batten kicked him. (Pl's Statement of Facts (DE 122) ¶¶ 8-9). Prior to being placed into the holding cell, in the receiving area, defendants Wade and Batten were at plaintiff's sides, they had control over plaintiff, and plaintiff was not resisting or talking. (Pl's Decl. (DE 123-1) ¶ 10).

Regarding the fourth Whitley factor, whether efforts were made to temper the severity of the force used, viewed in the light most favorable to plaintiff, the evidence permits an inference that defendant Batten did not make an effort to temper the severity of the force used, but rather stopped kicking plaintiff only upon being ordered to do so by Smith and Herring. (See Smith Aff. ¶ 21; Pl's Statement of Facts ¶11).

In sum, viewing the facts in the light most favorable to plaintiff, the Whitley factors weigh in favor of plaintiff and permit a reasonable inference that defendant Batten used force maliciously and sadistically for the very purpose of causing harm." Hudson, 503 U.S. at 6-7.

Defendant Batten argues that he is entitled to summary judgment because his kick of plaintiff was "tantamount to a 'push or shove' that caused no discernable injury." (DE 135 at 10 (quoting Wilkins, 559 U.S. at 38)). Plaintiff, however, does not complain of a "push or shove," but rather that defendant Batten kicked him while he was lying in fetal position on the floor of a holding cell in full restraints. Plaintiff also presents evidence permitting an inference that defendant Batten kicked plaintiff more than once. (See Pl's Decl. ¶ 12). With respect to injuries, plaintiff suffered "bruises and cuts on [his] head and pain throughout [his] body." (Id. ¶ 14). Plaintiff's medical records show "[b]ruising and hematoma to L eyebrow ridge and under L eye," and "[l]inear bruising to R mid

9

back." (DE 123-2). Accordingly, viewing the facts in the light most favorable to plaintiff, defendant Batten did not apply mere trivial force that caused no discernable injury.

Defendant Batten also argues that plaintiff's claim fails because he "assumed the risk of being injured" by virtue of plaintiff's prior conduct in assaulting former defendant Fitzgerald and resisting officers' restraints on the way to the holding cell. (DE 135 at 15-16). Defendant suggests that plaintiff's conduct must be viewed as a continuity of action from the time of the assault on former defendant Fitzgerald through the point he was in the holding cell. Defendant Batten thus suggests that there was, in fact, a legitimate need for the force used for purposes of maintaining or restoring discipline at Maury.

In so arguing, however, defendant presents the facts in the light most favorable to him, and not in the light most favorable to plaintiff. When viewed in the light most favorable to plaintiff, it is reasonable to infer that plaintiff no longer presented any threat to officers or the maintenance of discipline at the point he was in the holding cell, fully restrained, not talking, lying on the floor in a fetal position. (See Pl's Decl. ¶11). Likewise, while the video evidence is subject to multiple interpretations, it permits an inference that plaintiff did not engage in a continuous course of disruptive conduct but rather that his disruptive conduct ceased by the time he was brought to the holding cell. (Surveillance video (DE 131-4) Camera 78). Accordingly, defendant Batten's argument is an insufficient basis for summary judgment in his favor.

Defendant Batten also argues he is entitled to qualified immunity, where "a reasonable officer could have believed the conduct in issue to be lawful, in light of clearly established law and the information the [arresting] officers possessed." (DE 135 at 8 (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)). On the basis of the same standard, he contends his use of force was

privileged under North Carolina law. (Id. at 13 (quoting Knox v. N.C. Criminal Justice Education & Training Standards Commission, 2014 WL 10794970 (N.C. Office of Admin. Hrg., Nov. 19, 2014)).

Qualified immunity analysis proceeds in two steps. First, the court determines "whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the officer's conduct violated a constitutional right." Clem v. Corbeau, 284 F.3d 543, 549 (4th Cir. 2002) (quotations omitted). If the answer is "yes," as here, then –

> the next, sequential step is to ask whether the right was clearly established at the time of the events at issue. This determination must be made in light of the specific context of the case, not as a broad general proposition. If the right was not clearly established in the specific context of the case – that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted – then the law affords immunity from suit.

Id. (internal quotations and citations omitted).

Here, in light of Wilkins, Hudson, and Whitley, it was clearly established in 2014 that "the conduct in which [defendant Batten] allegedly engaged was unlawful in the situation he confronted," id., where those facts are taken in the light most favorable to plaintiff, as they must be at this juncture in the case. This is because the facts permit an inference that at the time force was applied, there was no need for force, the force used was more than trivial, there was no threat reasonably perceived by officers, and no effort was made to temper the force. Under Wilkins, Whitley, and Hudson, it was clearly established that application of force in such specific context constituted an Eighth Amendment violation. See Wilkins, 559 U.S. at 39; Hudson, 503 U.S. at 5-7; Whitley, 475 U.S. at 319. Therefore, defendant Batten is not entitled to summary judgment on the basis of qualified immunity.

11

In sum, where plaintiff has presented genuine issues of material fact as to whether defendant Batten committed an Eighth Amendment violation, under clearly established law, defendant Batten's motion for summary judgment must be denied.

2. Plaintiff's Motion for Summary Judgment

From the opposite perspective, viewing now the facts in the light most favorable to defendants Batten and Wade, genuine issues of material fact preclude summary judgment in favor of plaintiff.

With respect to the first Whitley factor, the need for force, defendants Batten and Wade have brought forth evidence that there was a need for force at the time defendants Batten and Wade kicked plaintiff in the holding cell. In particular, plaintiff presented an extreme danger to officers and other inmates beginning with his violent assault upon former defendant Fitzgerald, and plaintiff continued to be disruptive up to the point that he was kicked in the holding cell. Defendant Batten stated, in this regard:

> The whole time from programs to intake [plaintiff] was swearing at us, jostling, and not following direct orders to walk. . . . Once in intake or receiving [defendant Wade] and myself placed [plaintiff] on the ground by sitting him on his butt. [Plaintiff] in that process rolled or turned on his side at that time.

(Batten Int. Invest. Statement (DE 123-3)).[3] Similarly, he stated:

---

[3] Defendant Batten objects to court consideration of the Batten internal investigation statement (DE 123-3) on the basis that it is not sworn or verified. In the alternative, Batten asks the court to consider it only for purposes of demonstrating the continuation of actions by plaintiff requiring control and discipline. Because the court at this juncture has only considered it for such alternative purposes, the court need not reach defendant Batten's objection to consideration of the document otherwise in evidence. Defendant Batten also objects to consideration of SBI interview summaries. The court, however, did not rely upon such SBI interview summaries in denying defendant Batten's motion for summary judgment. Therefore the court need not determine conclusively at this juncture whether such interview summaries are admissible. The court notes that internal investigation reports and SBI reports generally may be admissible as records of a public office. See Federal Rule of Evidence 803(8); Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 164 (1988). Where the reports contain a second layer of hearsay, however, an independent basis for admission of such statements must be shown. See Fed. R. Evid. 803 (1972 Advisory Comm. Notes) ("In a hearsay situation, the declarant is, of course, a witness, and neither this rule nor Rule 804 dispenses

> During transport, [plaintiff] continued to disobey orders and continued resisting. We were trying to take [plaintiff] to the intake area, where medical staff could examine him. [Plaintiff] continued to be uncooperative, kept his body stiff, and was aggressive and continued to verbally berate the officers with vulgar language during transport. . . . <u>Once in the intake area, we were still trying to restrain [plaintiff]</u>.

(Batten Aff., ¶¶ 8-9) (emphasis added). Accordingly, drawing inferences in the light most favorable to defendants Wade and Batten, where plaintiff continued to be disruptive in the holding cell as a continuation of his prior conduct, there was a need for some additional force as a means to restore discipline.

Regarding the second <u>Whitley</u> factor, again viewed in the light most favorable to defendants Wade and Batten, the amount of force applied was proportional to the need for application of force at the time. According to defendant Batten "I delivered one strike to him in the buttocks area with minimum force by my foot, which is an approved force technique. I used the top part of my foot for the strike as I had been trained." (Batten Aff. ¶ 9). Viewed in the light most favorable to defendant Batten, this is a trivial amount of force, which caused no discernable injury traceable to that particular kick. In addition, viewed in the light most favorable to defendant Batten, the medical records permit an inference that the kick by defendant Batten did not cause injury, and that any injuries sustained by plaintiff were the result of earlier struggles and the restraints employed. (See DE 123-2 at 8).

Regarding defendant Wade, his application of force is more serious because he applied a kick to plaintiff's head. Nevertheless, viewing the facts in the light most favorable to defendant Wade, the medical records permit an inference that the kick by defendant Wade did not cause injury, and

---

with the requirement of firsthand knowledge."). In the case of investigative reports of statements made by defendants Batten or Wade, for example, as cited in the discussion of plaintiff's motion for summary judgment herein, the statements may be admissible as admissions of party opponent, under Federal Rule of Evidence 801(d)(2).

13

that any injuries sustained by plaintiff were the result of earlier struggles, particularly the violent altercation with former defendant Fitzgerald, where plaintiff was tackled and brought to the ground by officers. (See DE 123-2 at 8). For example, as noted by former defendant Fitzgerald regarding that violent altercation:

> Officer Wade arrived and struck [plaintiff] with his baton in order to stop [plaintiff] from further assaulting me. Wade then tried to restrain [plaintiff] . . . Wade and I both ordered [plaintiff] to drop the weapon which head attacked me with and he refused. . . . the situation was still extremely volatile and [plaintiff] was continuing to resist Officer Wade.

(Fitzgerald Aff. ¶¶ 10-11) (emphasis added). Likewise, according to an SBI investigative report of interview with Wade, "Wade used his baton against [plaintiff], striking first [plaintiff's] right leg . . . and then finally his "shoulder and head area," and "Wade struck [plaintiff] until he fell to the ground." (Wade SBI Statement (DE 124-1) at 3) (emphasis added).[4] Accordingly, viewed in the light most favorable to defendant Wade, any injuries caused to plaintiff's head were due to baton strikes to the head during the altercation with Fitzgerald, and not due to being kicked in the holding cell. Accordingly, although the extent of injury is not determinative of liability, it is a factor in permitting an inference that the kick by defendant Wade was proportional to the need for force under the circumstances.

With respect to the third Whitley factor, the threat reasonably perceived by prison officials, defendants Wade and Batten have brought forth evidence permitting an inference that they perceived a very significant threat from plaintiff. For example, defendant Batten stated in internal

---

[4] See footnote 3, above, for discussion of admissibility of SBI investigative reports. Although the Wade SBI statement was filed under seal, the court finds that sealing of this order or redaction of the quoted potion of the Wade SBI statement is not warranted, where the quoted portion of the Wade SBI statement does not reveal any confidential or sensitive SBI investigative processes or techniques, and where sealing or redaction of the quoted portion of the Wade SBI statement does not meet the standard for sealing in the context of summary judgment motions. See Knight Estate of Graham v. City of Fayetteville, 234 F. Supp. 3d 669, 683 (E.D.N.C. 2017).

investigation report: "I felt that [plaintiff] was still very much a threat to us . . . given the fact that moments before [plaintiff] tried to kill Fitzgerald." (DE 123-3). Further, he stated in his affidavit:

> The magnitude of the assault on Officer Fitzgerald, an attempted murder with a sharp weapon, was emotional and caused fear. I have never been involved in inmate violence of this magnitude. This was the most risky and unsafe inmate disturbance that I have ever encountered. It was very difficult and emotional. From my observations and what I was told, [plaintiff] had exhibited the highest level of dangers as an inmate. I believed that [plaintiff] had to be completely controlled in order to avoid him having any further opportunities to injure other officers. . . . The fact that [plaintiff] was handcuffed and had other restraints on him did not render him incapable of injuring officers restraining him. [Plaintiff] retained the ability to inflict strikes and kicks. As we finally got [plaintiff] in the holding cell in the intake area, [plaintiff] still had the ability to kick us and could have done so. Based on the totality of the circumstances, I believed that my strike to the buttocks area of [plaintiff] was appropriate and lawful. . . . Preventative action was necessary to control him. Based on the totality of his actions and words, [plaintiff] needed to be controlled by minimum force.

(Batten Aff. ¶¶ 5, 8-10). Accordingly, the third Whitley factor, when viewing facts in the light most favorable to them, weighs in favor of defendants Wade and Batten.

Regarding the fourth Whitley factor, whether efforts were made to temper the severity of the force used, viewed in the light most favorable to defendants Wade and Batten, they did make efforts to temper the severity of the force used, for the reasons stated above with respect to the second Whitley factor.

In sum, viewing the facts in the light most favorable to defendants Wade and Batten, and drawing all reasonable inferences in their favor, they have presented a genuine issue of material fact as to whether they applied force "in a good-faith effort to maintain or restore discipline" rather than "maliciously and sadistically for the very purpose of causing harm." Hudson, 503 U.S. at 6-7. Therefore, plaintiff's motion for summary judgment must be denied.

**CONCLUSION**

Based on the foregoing, plaintiff's motion for summary judgment (DE 120) is DENIED, and defendant Batten's motion for summary judgment (DE 134) is DENIED. The court DIRECTS the parties, with plaintiff continuing to appear through NCPLS, to meet and confer and to file a joint status report within **21 days** of the date of this order regarding the following:

1) the parties' positions regarding utility of court-hosted settlement conference or other alternative dispute resolution procedures, and proposed time frame for conducting the same.

2) three alternative proposed dates for trial, including estimate of trial length.

Thereupon, the court will enter such further order regarding trial planning and scheduling as is warranted.

SO ORDERED, this the 27th day of September, 2017.

LOUISE W. FLANAGAN
United States District Judge